## PIERCE & ux. v. DUSTIN.

Where a legacy is given in general terms to a wife, without restriction, the husband may reduce it to possession, or he may for a valuable consideration release or assign the same by a deed to which she is not a party. But where the annual income of a legacy is given to the sole use of a wife, free from the control of the husband, he cannot so assign it.

Where money is received for a legacy given to a wife, over which her husband has no control, the statute of limitations does not run against the wife so long as the coverture continues. And a suit may be instituted for such money, for the benefit of the wife, in the name of the husband and wife, during the continuance of the disability.

A set-off of demands against the husband will not be allowed in defence of such suit.

Where money is wrongfully received for the income of a legacy given to a wife, over which the husband has no control, the party receiving it is liable to interest for its detention, the wife being herself legally incapacitated to bring a suit therefor.

ASSUMPSIT. The writ was dated October 6th, 1849, and contained one count for $500, money had and received by the

defendant to the use of Clarissa Pierce, while covert of Daniel Pierce.

The action was brought to recover the interest on a fund of $275.16, provided by the will of Jonathan Hardy, the father of said Clarissa, for the term of twenty-two years and four months, next preceding the 4th day of January, 1843; and also interest on the sums of yearly interest, from the time they were received by the defendant, amounting in all to the sum of $368.

The demand was made of the defendant on the 31st day of July, 1849. The demand was made for no stated sum, but for what was due Mrs. Pierce on the legacy created by the will of Jonathan Hardy. During all this time Clarissa was a *feme covert*.

The plea was the general issue. Also the statute of limitations. The replication alleged—

1st. That the cause of action did accrue within six years before the bringing of the suit; on which issue was joined.

2d. That Clarissa was *feme covert* at the time when the cause of action accrued, and so continued until within six years before the commencement of the action.

To the second replication the defendant demurred.

The case was committed to an auditor, who reported, in substance, that said fund was created by the will of Jonathan Hardy, that the annual interest on the fund, to the amount of $368, was received by the defendant, who assumed to be agent, and that he has never accounted for the same.

The provisions of the will of Hardy, so far as applicable to this case, were as follows:

" Sixthly. I order that the sum of two hundred seventy-five dollars, sixteen cents, be paid out of my estate to Clarissa Pierce, wife of Daniel Pierce, during her natural life, for her use and improvement."

" When the above sums named are paid out to John, Paul, Silas, Clarissa and Timothy, it will be the sum of three hundred dollars each one has received out of my estate, which is equal to

what Jonathan and Thaddeus has received out of my estate ; and then the estate is to be equally divided amongst my children, after paying my debts and legacies mentioned; provided, however, that part which is intended for the said Clarissa Pierce, wife of Daniel Pierce : She is to have the use and improvement thereof during her natural life ; and after her decease I give and bequeath it unto Almira Pierce, George Pierce, Catharine Pierce and Hannah Pierce, children of the said Daniel and Clarissa, to be equally divided amongst those children at her decease; and the children, if she should have any after this date, they shall have equally with those named."

In the year 1821, upon the representation to the judge of probate that an inventory had not been returned, and that the said legacy had been duly demanded, but not paid, it was ordered that a suit be brought on the executor's bond. Suit was accordingly brought March 20, 1821, in the name of the judge of probate, and judgment recovered at the January term, 1825, for $95.28 debt, and $42.35 cost. This judgment was made up of the interest on said legacy, from January 19, 1819, to January 20, 1825 ; but the principal sum was not recovered.

The execution issued upon this judgment was discharged by the defendant, signing as " creditor in interest."

The plaintiffs admitted that the interest on the fund was received in 1843, '44 and '45, by Clarissa herself, from the defendant.

The defendant offered to show that on the 8th day of September, 1820, Daniel Pierce made and executed an assignment to him as follows :

" Know all men by these presents, that I, Daniel Pierce, of Warner, in the county of Hillsborough, and State of New Hampshire, husbandman, in consideration of the sum of one hundred dollars, paid me by Ebenezer Dustin, of Hopkinton, in the county aforesaid, husbandman, the receipt whereof I do hereby acknowledge, do hereby grant, assign and transfer to him, the said Ebenezer Dustin, and his heirs and assigns, all the right, title, and interest and claim, which accrues to me in right of my

wife Clarissa, by the last will and testament of her father, Jonathan Hardy, late of said Warner, deceased; to have and to hold the same to him, the said Ebenezer Dustin, his heirs and assigns, to his and their own proper use and benefit forever; and do hereby appoint the said Ebenezer Dustin, his heirs and executors, my attorney and attorneys, irrevocably to sue for and recover and receive the same."

The assignment was duly signed, sealed and witnessed.

The defendant also offered to show that the interest from 1819 to 1843 was received by him as attorney of Daniel Pierce, and appropriated by him to the use of Pierce and his family for their support, as shown by an account filed by way of set-off, as follows:

| | | Daniel Pierce to E. Dustin, | Dr. |
|---|---|---|---|
| | | To cash advanced to the time of transfer of legacy, | $44.26 |
| 1828. | September. | To amount due on notes, | 40.39 |
| | Nov. 9. | To 14 weeks' board of his son George, | 17.50 |
| | | To cash, to pay Ballard for his term, | 3.00 |
| | July 15. | To a pair half soles, and putting on to George's shoes, | .50 |
| 1830. | September. | To pair shoes for his son George, | 1.75 |
| | Oct. 23. | To boarding his son George 23 weeks, | 23.00 |
| | | To paid Ballard for his term, | 4.25 |
| 1833. | March 23. | To shawl, $5; to cash, $3, | 8.00 |
| | Sept. 19. | To 11 yards fulled cloth, | 11.00 |
| | Dec. 9. | To 1 hog, $14; cash, $3, | 17.00 |
| 1834. | May 30. | To cash paid Miss Taylor, | 3.00 |
| | | To cash paid for a cow for him, | 21.00 |
| | | To use of a cow the summer of 1833, | 6.00 |
| | July 31. | To cash paid Curtis & Gilman, | 118.24 |

Pierce *v.* Dustin.

1837 and 1838.  To use of the Clifford farm,           80.00
                To trouble and expense in the suit
                    to recover the interest on legacy,   70.00
                                                       ─────────
                                                        $468.89

Interest claimed on the above account.

The auditor rejected this evidence offered by the defendant. The defendant then contended that if the plaintiffs were entitled to any thing, they could not recover interest upon the annual interest of the fund.

The auditor however found the defendant indebted, as above stated, for the full sum claimed.

The questions arising upon the auditor's report were transferred to this court for determination.

*Bellows,* for the plaintiffs.   The defendant claimed to hold the fund in trust.   The demand was made on the 31st day of July, 1849, and then the cause of action accrued.   If he held it in trust, it matters not for whom it was held; the cause of action did not accrue until the demand.

But however this may be, the case comes within the saving clause of the statute, which expressly saves the rights of married women till after the disability be removed.   Act of June 16, 1791, N. H. Laws, Ed. of 1815, p. 165, § 4; Act of June 30th, 1825; N. H. Laws, 1829, p. 77, § 2; Rev. Stat., chap. 181, § 8.

The suit, though in the name of the husband and wife, is the suit of the wife, and the fact that she must by law join him, does not affect this clause in the statute of limitations.   It is so in all civil actions, and yet the right of the wife is saved.   In *Watson* v. *Watson,* 10 Conn. Rep. 75, it was held that the right of the wife was not barred by fifteen years' adverse possession during the coverture, and this is an action brought by husband and wife. *Jackson* v. *Sellick,* 8 Johns. Rep. 262; *Caldwell* v. *Black,* 5 Iredell's Rep. 463.

The offer of the defendant was to show an assignment by

Daniel Pierce, the husband, of all the interest that accrued to him in right of his wife by the will of her father, and that the defendant appropriated the sum received for the support of Pierce and his family.

Waiving the question whether Pierce undertook to assign the interest of his wife at all, we say he had no power over the legacy whatever ; that it was bequeathed to the wife for her sole and separate use. This is directly settled in *Judge of Probate* v. *Hardy*, 3 N. H. Rep. 147. In that case this very clause in the will was drawn in question.

The will gives a sum of money to Clarissa Pierce, wife of Daniel Pierce, during her natural life, for her use and improvement. And in another part of the will it is provided that the sum intended for the said Clarissa, she is to have the use and improvement of during her natural life.

The only question is one of intent. Did the testator intend to give it to her for her sole and separate use ? On this point there is no room to doubt. It is given to her during her natural life, and then to her children. Many cases are cited in Clancy on Husband and Wife, p. 262, where it was held that the wife took a separate estate, upon the strength of provisions much less explicit than in this case, and fully sustain *Judge of Probate* v. *Hardy*. The intent is to govern, although the language be not strictly technical.

When, however, one clause of a will makes a bequest to a married woman for her sole and separate use, in language that is strictly technical, the omission to use it in another clause has been held to justify the construction that the latter bequest was not to her sole use ; and this upon the ground that the testator knew what technical language would give a separate estate, and would have used it had it been his purpose so to bequeath his property. Cases cited in Clancy 268. The inclination of courts and the course of legislation in this State have been to favor and protect the rights of married women.

*Fowler*, for the defendant.

1st. The statute of limitations was a bar to this suit. The last interest received by the defendant was on the 4th of January, 1843; more than six years before the commencement of this action. The defendant having received the money of another, if he received it wrongfully was liable to an action to recover it back immediately. The statute, therefore, commenced running as to each annual payment of interest from the moment when the defendant received it; that is, from the moment when the defendant was liable to be sued for that instalment, which was the very next moment after he had wrongfully received it into his possession. Angell on Limitations 41; Evans' Pothier 404; Story's Equity 1521, a.

The statute must then be a bar to the action, unless there is something in the second replication that one of the plaintiffs was *feme covert* at the time the cause of action accrued, and so continued until within six years before the commencement of this suit. Now it seems to us that the case itself furnishes sufficient answer to this allegation. The suit is brought by the husband and wife to recover money received thirty years ago. The plaintiffs were married long before that time, and have so continued ever since. They had the same capacity thirty years ago to sue that they now have. No disability to bring this action has ever existed. The parties plaintiff have always been in a condition to bring this action legally and properly, from the moment when the first instalment of interest was received.

There has always been a person—the present plaintiffs—in existence who might properly have instituted a suit. The statute must therefore run against the claim which they have set up to recover what they might have recovered thirty years ago. Angell on Limitations 55; *Murrey* v. *East India Co.*, 5 Barn. & Ald. 204.

2d. If not barred by the statute of limitations, the defence offered to this suit by the defendant, and rejected by the auditor, was a valid and sufficient one, and should have been received.

If the annual interest upon this legacy belonged to the wife, it was competent for the husband to assign it to the defendant,

as he did by his deed of September 8, 1820, and such assignment transferred the same to the defendant absolutely.

As to the wife's choses in action, the husband has power to sue for and recover, or release or assign them. 2 Kent's Com. 135. The rule is the same if a legacy or distributive share accrues to the wife during coverture. 2 Kent's Com. 135; *Garforth* v. *Bradley*, 2 Vesey, sen. 675; 5 Johns. Chan. 196; *Howland* v. *Bloom*, 6 Johns. Chan. 178; *Carr* v. *Taylor*, 10 Vesey 178; *Wildman* v. *Wildman*, 9 Vesey 174.

The husband may release his wife's choses in action, even those in remainder or expectancy, which may possibly fall in during the marriage. Roper on Husband and Wife 227, 237.

In *Tucker* v. *Gordon*, 5 N. H. Rep. 564, the superior court of this State say: " It seems to be settled in general, that a husband has the control of a legacy given to his wife. He may· release or assign it by a deed or other instrument to which she is not a party, and payment to her is no bar to the action brought by him." See, also, *Udall* v. *Kenney*, 3 Cowen's Rep. 590; Bingham on Coverture 216; 4 Burns' Ecclesiastical Law 319; Lovelass on Wills 247, 248.

The same doctrine is reiterated by *Parker*, C. J., in *Parsons* v. *Parsons & Gilman*, 9 N. H. Rep. 309, 321, where he says that a husband may release or assign a legacy to, or the distributive share of his wife in an estate, for a valuable consideration, and by a deed to which she is not a party.

Again, the doctrine is well settled that if a husband reduce a legacy payable to his wife to possession, it becomes absolutely his own. *Parsons* v. *Parsons & al.*, 9 N. H. Rep. 321; 2 Story's Equity 631; Clancy's Rights of Husband and Wife 111.

Now in this case, by the deed of September 8, 1820, Pierce constituted the defendant his attorney, irrevocable, to receive this legacy payable annually to his wife. Under that authority the defendant acted; and his reduction of this legacy to his possession was the act of Pierce; and its possession by the defendant was the possession of the husband; and by such reducing to the possession of the defendant the legacy became as absolutely the

property of Pierce as if he had taken the money with his own hands, and he can no more legally sustain this action to recover the money from the defendant, as the property of his wife, than he could have sustained an action against himself for the same object.

Again, the husband brings this suit. It could not be brought by the wife alone. The defendant proposed to show that it could not be sustained, because the husband himself had sold and assigned to him the debt claimed to be recovered. The decision of the auditor, excluding this evidence, as also the evidence showing the manner in which the money had been applied, involves the absurdity of saying, that if the defendant ever had the money claimed, no matter how fairly he purchased and paid for it, or how honestly he has applied it, he shall now be compelled to pay it back again.

EASTMAN, J. The will of Jonathan Hardy, and particularly those clauses of it upon which the decision of this case rests, have heretofore undergone à judicial construction in the superior court of this State, in the case of *Judge of Probate* v. *Hardy*, 3 N. H. Rep. 147. In that case *Richardson*, C. J., says: " We think that it was the intent of the testator that this sum should be reserved for the use of Clarissa and her children, and that the husband of Clarissa should have no control over it." And again : " This will seems to us to give to Clarissa the right to receive only the interest of this legacy." It was also there held that the executor was by law the trustee of the fund; that it should be kept by him, and the interest be paid over to her as it should fall due.

In the case of *Parsons* v. *Parsons & al.*, 9 N. H. Rep. 321, *Parker*, C. J., has stated the law, and collected the authorities in regard to the rights of a husband over the distributive share or legacy of the wife; and he states it thus: " Neither a legacy to a wife, nor a distributive share in an estate in which she is interested, vests in the husband absolutely. They are not like her personal property in possession, which become absolutely his.

But they are classed with and sometimes called her choses in action. If the husband reduce them to possession, as he may, they become absolutely his own. And he may release them or assign them for a valuable consideration, and by a deed to which she is not a party. But until he has reduced them into possession, or in some other way barred her right, he has only a qualifying interest, and if he die first the right survives to her. And possession by the husband as executor and trustee, is not a sufficient reduction into possession to bar her of her right. If, however, he survive his wife, he is entitled to administration, and to recover and receive them to his own use." See also *Marston* v. *Carter*, 12 N. H. Rep. 159.

Upon this doctrine it will be apparent that should we hold that the legacy was given to the wife of Pierce, generally, without restriction, that her husband could reduce the same into possession, or bar her right thereto by assignment. But without going into any discussion as to the meaning of the will, it is sufficient to say that we feel bound by the construction that was given to it in the case of *Judge of Probate* v. *Hardy;* and by that construction the husband could not assign the legacy. He had no control over it, or its income, until actually in his possession.

Adhering to the construction given to the will in that case, it becomes unnecessary for us to determine how far the assignment made by Pierce to the defendant would avail, if Pierce had the right to make it. Having no right to make it, the assignment is void.

But there is another question raised in this case, which is presented by the demurrer to the replication to the plea of the statute of limitations. The money claimed of the defendant was all received by him more than six years before the commencement of this suit, and unless the disability of the wife is a sufficient answer to the plea of the statute, the action must fail.

The provision of our statute by which the rights of infants, *feme coverts* and insane persons are saved, is believed to be universally common to statutes of limitations. As a general rule, the statute does not run so long as the disability continues, and

the rights of a *feme covert* are not prejudiced during her incapacity to institute a suit therefor. And such was the fact in this case. The plaintiff, Clarissa Pierce, was under coverture prior to the reception of any of the money by the defendant, and for aught that appears still remains so. According to the construction given to the will, the right to the income of the legacy was her sole right, one over which her husband had no control; but still, one which she could not enforce in her individual name and capacity during coverture. It was therefore a right which was saved by the statute so long as the disability should continue.

It is no sufficient answer to this position, to say that the husband and wife could have instituted the suit at any time. The fact that it might be done, does not prove that it necessarily must be done to save the statute and her rights. The right was in her; the reservation of the statute is for her benefit, and until she had personally the power to institute the suit, the statute would not run against her. To test the principle: Suppose the husband to have died a month before the suit was commenced, and that it had been brought in her name; it would hardly be contended that the statute of limitations could be successfully interposed to such suit by her. The disability of coverture would not be removed until the death of the husband, and the statute would not begin to run till then; and because the husband could unite with his wife and bring the suit, her powers and her rights would not be abridged thereby.

This suit is instituted for the benefit of the wife, in the name of the husband and wife; for she has no legal existence that will enable her to bring a suit in her own name during the coverture. And such a suit may be brought during the continuance of the wife's disability to maintain a sole suit. *Watson* v. *Watson,* 10 Conn. Rep. 77; *Leighton* v. *The State,* 4 Harrington's Rep. 8; *Stuart* v. *Kissam,* 2 Barb. Sup. Ct. Rep. 493.

We see no objection to the allowance of interest upon the sums as they were received. The defendant has had the use of the money, and the wife was not in a situation to make any legal demand or institute any suit for the same.

Neither can the set-off be allowed. The defendant has no cause of action against the wife therefor. The credit was given to the husband, and the charges were made against him. If a demand against the husband could be set off against the wife's claim for the income of the legacy, then would the object of the will be defeated, as the income would thus be indirectly appropriated by the husband. The disallowance of the set-off may seem to be a hardship upon the defendant. But after the decision of the case of the *Judge of Probate* v. *Hardy*, in which the defendant participated, at least in the receipt of the money, he knew what construction the court had given to the will, and should have governed himself accordingly. Pierce can now pay him the amount of the set-off, if he has the disposition and ability so to do.

*Judgment on the report.*