## MARSTON *vs.* CARTER & Trustee.

A testator bequeathed the use of his household furniture to his wife for life ; after her decease to his daughter for life, and after her decease to be equally divided among her children—*Held*, that the limitation over to the children was valid—that the use bequeathed to the daughter did not vest in the husband, on the death of the widow—that it was a personal right, not assignable—that although the husband might have the benefit of it with his wife, he could not reduce it into possession, so as to acquire a right to sell it—and that his creditors could not take it in execution.

A husband may refuse to reduce a legacy to his wife into his possession, and permit her to hold it for her separate use ; and if he do so, *it seems* that his creditors cannot attach it, by trustee process or otherwise, for the payment of his debts.

FOREIGN ATTACHMENT. The disclosure of Moses Hook, the supposed trustee, set forth, that at the time of the service of the writ upon him he had in his possession certain household furniture, part of which was returned as attached on the writ, and which was left with him, for storage, by Joshua B. Carter, the principal defendant—that he had been informed, and believed, that the property was bequeathed to said Carter's wife, by the will of her father, Jacob Hook, a copy of which was annexed to the disclosure.

By this will the testator gave to his wife, Sarah B. Hook, among other things, all his household furniture, for her use and benefit during her natural life, and after her decease to go as therein after directed. In a subsequent part of it, he gave to his daughter, Sarah C. Carter, certain real estate ; "also all my household furniture after the decease of my wife, the said Sarah B. Hook, which is not heretofore disposed of in this will. All the above mentioned land and furniture, which I have given to my daughter, Sarah C. Carter, is to be for her use and benefit during her natural life, and after her decease to be equally divided between her children."

The disclosure further stated, that Jacob Hook died in 1836, or 1837, in possession of this property—that after his decease it passed into the possession of his wife, Sarah B. Hook, who died sometime in 1838, and after her death it was deposited in the possession of the trustee, Carter agree-

ing to pay him for storage, and saying that he wanted to keep it for his children, and wished the trustee to keep it till he could find a suitable place to keep it himself—that Carter said he did not want to use it himself—and that his wife was present, and assented to these directions, and gave some directions herself about a portion of the articles.

*Cross*, (of Mass.) for the plaintiff. The bequest is not for the separate use of the wife. The equity doctrines, excluding the marital rights of the husband, do not apply. 2 *Story's Eq. Jurisprudence*, § 1803, *p.* 610, *and note, cites* 2 *Russell & Mylne* 183, *Tyler* vs. *Lake.*

The property attached is not an unpaid legacy—not a right to a legacy in the hands of an executor. The bequest has been executed by delivery to the legatee. But suppose it were so, not being for the separate use of the wife, it would vest absolutely in the husband. *Reeves' Domestic Relations, ch.* 4 ; 14 *Pick.* 352, *Goddard* vs. *Johnson, Exr.*

The articles bequeathed had been delivered to the wife. Can there be a doubt, then, that the delivery of an article to the wife, to which the husband has an absolute right, is in law a delivery to the husband ? *See Commonwealth* vs. *Manly*, 12 *Pick.* 173. It may be said that the declaration made by the husband, at the time the goods were put in store, controls the legal operation of the possession by the wife. In answer we observe—If such were the expressions, they would not alter the legal effect of the act. 6 *Johns.* 112, *Whitaker* vs. *Whitaker.* But such is not the import of the husband's language. On the contrary, it is a declaration that he considered the property in himself, and himself, not his wife, the medium through which it would descend to the children.

We contend, 1. That the husband is the sole and absolute owner of the whole ; to the extent of the whole, the articles are liable for his debts ; to the value of the whole, the trustee is chargeable.

The policy of a free country, of a commercial community,

is not favorable to perpetuities. Even in England, personal property cannot be tied up for a period longer than a life or lives *in esse,* and twenty-one years and a fraction longer. To make the principle applicable in this case, the words of the will must be such as create an executory devise of a remainder to the children. The words are not such. There are no words of grant at all to the children. The last clause is rather a morsel of testamentary advice to his daughter, as to the final distribution of the property, than a bequest.

2. If the trustee be not liable for the whole, he must be for that part which is consumed in the using. 2 *Kent's Com.* 353 ; 5 *N. H. Rep.* 326, *Weeks* vs. *Weeks, Exr.* Most articles of household furniture may be said to perish in the using of two generations.

3. If not chargeable for the full value of the whole, or the perishable part, yet if the property vested in the husband, his interest in it for the life of his wife is liable to attachment. *Fearne on Contingent Remainders, at the close of the first chapter on Executory Devises ;* 2 *D. & E.* 376 ; 2 *Pick.* 248, *Ellis* vs. *Proprietors of E. M. Bridge.* The husband's interest seems to be precisely such an one as is indicated by the New-Hampshire statute regulating foreign attachments, which subjects to it "rights." *N. H. Laws* 499.

But it may be objected, that if chargeable thus far, great inconvenience may arise. The children, at the death of the mother, may not find the property. This matter is beyond the jurisdiction of this court. It is bound to execute the will of the testator ; not to make a new will, nor furnish any more guards of the old one than he himself provided. He might, had he so pleased, have used the mediation of a trustee.

*Ward,* (of Mass.,) for the trustee. The views of the respondent in this case are : 1. That the bequest is of a life estate to the wife, with remainder over ; and the husband has no interest, except, perhaps, as an equitable constructive trustee, for her benefit. *Bunb.* 187, *Rolfe* vs. *Budder ;* 2 *P.*

*Wms.* 316, *Bennet* vs. *Davis ;* 2 *Cox Rep.* 114, *Dixon* vs. *Olmius ;* 9 *Ves.* 369, *Rich* vs. *Cockell ; Ditto* 583, *Parker* vs. *Brooks.*

2. If he has an interest under the bequest, he has not chosen to avail himself of it ; having never taken possession of it on his own account, but only as agent for his children. The bequest over to the children is good. 2 *Russell & Mylne* 136, *Bartleman* vs. *Murchison.*

3. If he has an interest on his own account, and has accepted the bequest, and taken possession of the articles, his interest is not attachable, because there is no mode provided by law for the sale of that interest under the execution.

4. That if he has taken possession, and if the limitation over is void, still he stands only as trustee for the wife.

PARKER, C. J. If, as contended by the plaintiff's counsel, the limitation over in the will of Jacob Hook, to the children of Mrs. Carter, was void, on account of its tendency to create a perpetuity, it might perhaps admit of argument whether the bequest to the first taker, Mrs. Hook, was not absolute, so that on her decease the property would go to her administrator. Perhaps, however, the reason of the rule avoiding the perpetuity might, in this case, permit the property to pass to Mrs. Carter, and vest the absolute interest in her.

It is not necessary to consider this matter, because the limitation over to the children is valid. It is a limitation to take effect after lives then in existence ; and the law admits of executory bequests of chattels, with any number of successive limitations, so that they are made to take effect within a life or lives in being, and twenty-one years, and a farther period of gestation of a few months after. 2 *Roper on Legacies* 368; 3 *Atk.* 287, *Sheffield* vs. *Lord Orrey ;* 2 *Peere Williams* 686, *Stanley* vs. *Leigh ;* 2 *Vern.* 600, *Higgins* vs. *Dowler ;* 4 *Dane's Abr.* 687 ; 4 *Kent's Com.* 267, 271.

If the testator, instead of giving the use for life first to Mrs. Hook, and then to Mrs. Carter, had given the use for

life to either one of them, and on her decease to the children of Mrs. Carter, it would be as much of a perpetuity as it is now ; both the legatees for life being in existence when the bequest was made.

It is not at all important to settle, in this case, whether the children of Mrs. Carter living at the decease of the testator, or those living at her decease, are entitled under it.

Mrs. Carter having by the will a right to the use of the property for her life, the plaintiff next contends that this interest vests in the husband, and that he is entitled to charge the trustee on account of this interest, and sell the use of the property on the execution, in satisfaction of his demand.

But the use thus bequeathed is in its nature a personal right. The husband may of course have the benefit of it, along with the wife, but it is not assignable.

The value of the limitation over must depend materially upon the manner of the use by those who had the right for life ; and the testator, in giving the use of this furniture, first to his widow, and then to his daughter, evidently could not have contemplated conferring an interest upon either of them which should be the subject of sale and transfer, so that the possession and use for the term should be vested in the vendee. He doubtless reposed a personal confidence in those to whom he gave the use, and those interested in the limitation over have the right to require that the actual use should be confined to those to whom he gave it. As no security is required of a legatee for life, who is entitled to the possession, (5 *N. H. Rep.* 326, *Weeks* vs. *Weeks*,) none could be required of a vendee, if the use should be transferred. It is not like a devise of real estate, where the property has a fixed location, and where waste is easily ascertained, and a remedy may be had ; or a bequest of personal property producing an income, which income may be transferred, or taken.

We are of opinion, therefore, that the husband could not reduce the furniture to possession, so as to gain a right to dispose of the use and possession to a purchaser—that Mrs.

Carter, with his assent, could not lawfully transfer it, and that creditors of course cannot take the use on execution and sell it for the payment of his debts. A sale at auction of the use of the different articles, severally, and a delivery to the several purchasers, would render the limitation over worthless, if it might otherwise be supposed to possess some value.

If creditors could reach it in any way, it would seem to be by proceedings in equity, resulting in an order for the sale of the property itself, an investment of the fund for the benefit of those interested, and a payment of the income to the creditor, during the existence of the life estate. Whether that can be done, in the case of a specific bequest of the use of a chattel, we need not now enquire. Where there is a general bequest of a residue for life, with remainder over, the practice is to have the property sold, and the proceeds invested. *Vide* 2 *Kent's Com.* 354, *and notes.*

If the bequest to Mrs. Carter had been operative, and the limitation over to the children void, so that she would have taken an absolute property, her husband might have reduced it to possession, and his creditors then have taken it. But we hold that a legacy to a wife does not vest absolutely in the husband. 9 *N. H. Rep.* 309, 321, *Parsons* vs. *Parsons.* He has a right to reduce it into possession ; but if he do not exercise this right, it survives to the wife. And he may decline to do this, and permit his wife to hold it to her own separate use. *Ibid. ;* 17 *Mass. R.* 57, *Stanwood* vs. *Stanwood.*

It is said in this last case, that if creditors had claimed the property, the question might have been difficult. And in *Wheeler* vs. *Bowen & Trustee,* 20 *Pick.* 563, it was held that the interest of a husband in his wife's distributive share of an intestate estate, which the husband had not reduced to possession, might be attached in the hands of the administrator, by the trustee process, which operated, in this respect, as a statute assignment of the interest of the husband. But the property is not there held to have vested in the husband ab-

Marston *v.* Carter & Trustee.

solutely, until he has done some act asserting a right or power over it, or until his creditor takes it ; for if the husband die while the action is pending, the wife's right of survivorship is not divested.    1 *Met.* 476, *Strong* vs. *Smith & Trustee ; and see* 20 *Pick. R.* 517, *Hayward* vs. *Hayward.*

The decisions here have not gone so far as to authorize the creditor, by any process, to appropriate a legacy or distributive share of the wife to the payment of the husband's debts, without his assent, and before he has asserted a title to it.    The right of the creditor must depend upon the particular view to be taken of the right of the husband.   If the right of the husband, until some act done by him, be regarded not as a vested interest in the property itself ; but as a marital right, or power, which he may exercise, by some act of ownership, upon which an interest in the property becomes vested ; a creditor, without the assent of the husband, cannot reach the property, unless the case is an exception to the general rule.  We are not aware of any other marital right which the law permits him to exercise, in his character of a creditor.

*Trustee discharged.*