## WHEELER *vs.* MOORE & Trustee.

A creditor of the husband cannot appropriate the wife's property to the payment of the husband's debt, without the assent of the husband or wife.

The distributive share of the wife in an intestate estate cannot be attached, by the trustee process, for a debt of the husband, until he has done some act to reduce it to possession, or in some way asserted a right to it.

FOREIGN ATTACHMENT. From the disclosure of the trustee it appeared, that in the year 1841 he was duly appointed administrator of the estate of Mary Wright, late of Hollis, and accepted the trust, and that on the 4th day of October, 1842, he settled his account of administration, and there was found in his hands the sum of $256.02; and a decree was made that he should distribute the same among the heirs at law, by paying to Charlotte Moore, a sister of the intestate, and the wife of Mark Moore, the principal defendant, the sum of $64.00,—and to others similar sums.

It also appeared, from the disclosure, that Mark Moore refused to have the distributive share of said Charlotte go to pay the plaintiff's claim, and had so instructed the trustee.

The trustee further disclosed, that he had in his possession certain articles of household furniture, which were part of the effects of the grandmother of the said Charlotte Moore, who died since the death of the mother of the said Charlotte;—that there had never been any administration of the estate, but some of the heirs made a division, among them-

selves, of the effects, and the articles above mentioned were put into the hands of the trustee, as the share of said Charlotte. Neither the said Charlotte, nor her husband, were consulted as to the division. They had not seen the property since the division, and had not consented to it, except in saying, by letter, that they should be satisfied with any arrangement the other heirs might make. Said Charlotte claimed the property, and objected to having any part of it applied to the payment of the plaintiff's claim.

*Farley*, for the plaintiff. As to the $64, in his hands, the trustee may be charged. He has settled his account, and is accountable to no one except the distributee or her husband. Had the principal debtor been heir at law, there could be no question. *Adams* vs. *Barrett*, 2 *N. H. Rep.* 374. But the money in the hands of the administrator, upon the decree, vested in the husband. He alone had a right to receive it. The wife could not compel payment, or give a discharge. If personal property is given to the wife during coverture, or a legacy, it will go to the husband. It is not like choses in action. *Reeves' Dom. Rel.* 60, 61. It belongs to him exclusively.

A creditor may take all the husband could.

The wife's chattels real are liable to be sold for the husband's debts. 2 *Kent* 134–137.

The husband might recover the wife's share.

A general assignment in bankruptcy passes the wife's choses in action, subject to her survivorship.

As to the other property, there was no administration. If the heirs undertake to settle the matter, who can object? The heirs having agreed, and set out the portion of each, a right of possession vested in the several heirs. A creditor has the same right as in the other case. There cannot be a judgment for money, but the property may be sold on the execution. A purchaser would take it, subject to the right of an administrator. If Moore had the right of possession,

that chance, whatever it is worth, goes to the creditor, under the process.

B. F. Emerson, for the trustee. The part of the effects of the debtor's wife's grandmother, in the hands of the trustee, is not holden by this process. They have never vested in the debtor or his wife,—have not been accepted by them, and may never be accepted. Notwithstanding any agreement, administration may yet be taken on this estate, by the heirs, or some one of them, (Giles vs. Churchill, 5 N. H. Rep. 337,) in which case these goods would not go to this party, unless by a new agreement. And should the heirs not take administration, it does not appear that there are not debts due from the estate, and if so, the creditors may take administration, and these effects be taken for the debts.

And it is contended that the trustee cannot be charged for the money in his hands, decreed to be paid to the debtor's wife. The trustee can be charged only for property vested in the principal. A distributive share of the wife is not vested absolutely in the husband until it is reduced to possession; until he takes the money, or takes security to himself for it. To this Parsons vs. Parsons, 9 N. H. Rep. 321, is a direct authority. He may reduce it to possession, release, or assign it, but until that is done he has but a qualified interest in it.

It is believed that no case can be found where the trustee has been charged, unless the debtor had a legal or equitable title to the property, or has put it out of his hands fraudulently.

In 2 Kent 130, it is said the husband may sue for and recover the wife's choses in action, and when reduced to possession they become his. If he dies before getting possession, they remain her property. If she dies, he can obtain them only by settling her estate, and paying her debts, (see 3 N. H. Rep. 129.) This principle is supported by 8 Mass. 99; 13 Mass. 384; 17 Mass. 57.

In 16 *Mass.* 480, it is held that security given to both, for the property of the wife, will survive to her, although his estate be insolvent.

PARKER, C. J. We are of opinion that the trustee cannot be charged, in this case. The money, in his hands, is not the money of the principal defendant. It is, in part, the avails of property which formerly belonged to the sister of the wife of the principal defendant, and it is her distributive share in the estate of her sister, who has deceased. The husband is not one of the heirs of that estate. Nothing has descended to him. The decree of distribution directs payment to the wife. It is true that payment may be made to the husband, and it will discharge the administrator. And it is also true that he has a right to claim this distributive share to his own use, and that a payment to the wife, so long as the husband is living, without his assent, will not be good.

But his right to claim the property, and to appropriate it to his own use, does not make it his, nor is he obliged to exercise that right. He may omit so to do, and on his death it will survive to the wife, not by any descent from him, or title derived through him, but in her own right, as heir of her sister. 9 *N. H. Rep.* 321, *and auth. cited.*

If the husband refuse or neglect to reduce it to possession, or to assert a claim to it, it is clear that after his death neither his heirs, nor his creditors, could assert any title to it. Nor could his administrator in their behalf.

But it is contended that his creditors, in his life-time, may appropriate it to the payment of the husband's debts, notwithstanding he neglects, or even refuses, to assert any claim to it. And there are authorities which recognize such a power and right on the part of the creditor. 20 *Pick. R.* 563, *Wheeler* vs. *Bowen & Trustee; Ditto* 528, *Hayward* vs. *Hayward.* It does not appear that these decisions are founded upon any peculiar statute provision of Massachusetts; and we always hesitate, when we find our impressions not in ac-

cordance with the opinions of the very learned tribunal whose decisions we have just cited. But we cannot adopt the principles of those decisions, which perhaps may be there but a legitimate result from the doctrine, stated in *Commonwealth* vs. *Manley*, (12 *Pick. R.* 175,) that a legacy to the wife, and the wife's distributive share in an estate, vest absolutely in the husband. That doctrine, however, seems to have been overruled. 20 *Pick.* 528.

The principle which will authorize the creditor to interfere, without the consent of the husband or wife, and appropriate the property of the wife to the payment of the husband's debts, is not apparent to us. The right of the husband, to take the distributive share of the wife to his own use, is a marital right. A creditor cannot exercise rights of that character, against the will of the husband. 12 *N. H. Rep.* 159, 165, *Marston* vs. *Carter & Trustee.*

We find the view which we took of this matter, in the case just cited, very distinctly sustained, in relation to legacies to the wife, by the opinion of Mr. Chief Justice Marshall, in *Gallego* vs. *Gallego's Executor*, 2 *Brockenbrough's R.* 287. "The property," he says, "does not become his," [the husband's,] "nor is it subject to the liabilities which attach to that which is his, until it shall be reduced to possession. Till then his creditors have no claim to it. If he dies, leaving the wife, before reducing it to possession, his power is not transmissible to his representatives, but dies with him. Since the claim of the creditor extends only to the property of the debtor, it cannot reach a legacy until it becomes his property,"—and it is there held that "a relinquishment by the husband, of his marital right to a legacy bequeathed to his wife, is valid as to the creditors of the husband, and a court of equity will not interpose its authority to compel the husband to reduce the legacy into his possession, for the purpose of subjecting it to their claims."

Even in Massachusetts, the creditor must obtain a judgment, before he can defeat the wife's right if she survive her

husband.   1 *Met. R.* 476, *Strong* vs. *Dinsmore & Trustee.*
But while the creditors of the husband cannot appropriate
the property of the wife to the payment of his debts after his
decease, we are of opinion that they cannot maintain a fair
title to do so in his life-time, against his and her consent,
merely because the law has given him the power to take it
to his own use; when at the same time it recognizes his right
to refuse, and holds the property to be hers, if he neglects to
assert his rights of dominion over it.

*Trustee discharged.*